1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| T.H.,<br><br>                    Plaintiff,<br><br>          v.<br><br>KILOLO KIJAKAZI, et al.,<br><br>                    Defendants. | Case No. 23-cv-05552-LB<br><br>**AMENDED ORDER REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS**<br><br>Re: ECF Nos. 26, 28 |

**INTRODUCTION**

The plaintiff, T.H., seeks judicial review of a final decision by the Commissioner of the Social Security Administration denying her claim for supplemental security income (SSI)[1] under Title II and Title XVI of the Social Security Act (SSA).[2] This is her second petition to this court and follows a previous remand to the agency.[3] The plaintiff filed an opening brief in support of remand, the Commissioner filed a brief, and the plaintiff filed a reply. Under Civil Local Rule 16-

---

[1] The court filed this amended order because the plaintiff's application, while filed in March 2017, was filed before the March 27, 2017, effective date of the new regulations.

[2] Compl. – ECF No. 1; Br. – ECF No. 26 at 7. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[3] *T.H. v. Kijakazi*, No. 20-cv-09351-LB, 2022 WL 847305 (N.D. Cal. Mar. 22, 2022).

AMENDED ORDER – No. 23-cv-05552-LB

1   5, the matter is submitted for decision by this court without oral argument. All parties consented to

2   magistrate-judge jurisdiction.[4] The court remands for further proceedings.

3

4                                                    **STATEMENT**

5        The court assumes familiarity with the record and incorporates by reference the procedural

6   history outlined in its prior order. After this court's remand, the ALJ held a hearing on December

7   7, 2022, and heard testimony from the plaintiff and vocational expert (VE) Lizet Campos.[5] It was

8   held telephonically due to the COVID-19 pandemic.[6] The ALJ issued an unfavorable decision on

9   August 7, 2023.[7] The plaintiff appealed pursuant to 42 U.S.C. § 405(g). The court also assumes

10  familiarity with the record and incorporates by reference the medical-evidence summaries and

11  summary of the June 7, 2019, administrative hearing provided in its prior order. The next sections

12  summarize the most recent administrative hearing and findings.

13

14  **1.   Medical Records**

15       The plaintiff challenges the ALJ's evaluation of medical-opinion evidence.[8] The order

16  summarizes the relevant records in the analysis, below.

17

18  **2.   December 7, 2022, Administrative Hearing**

19  **2.1    The Plaintiff's Testimony**

20       The ALJ questioned the plaintiff, who had a non-attorney representative.[9] Since the June 7, 2019,

21  administrative hearing, the plaintiff testified that she had worked "taking care of school age children"

22

23  _____

    [4] Consents – ECF Nos. 7, 10.

24  [5] Administrative Record 556. Administrative Record (AR) citations refer to the page numbers in the
    bottom right-hand corner of the AR.

25  [6] *Id.* at 558.

26  [7] *Id.* at 532.

27  [8] Br. – ECF No. 26 at 7–8 (¶¶ 1–5). Citations refer to material in the Electronic Case File (ECF);
    pinpoint citations are to the ECF-generated pages at the top of documents.

28  [9] AR 556.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    but that the job "only lasted a few months" because of the COVID-19 pandemic.[10] She testified that

2    she experiences ataxia and that it "affects [her] upper extremities and [her] lower limbs," primarily

3    her right leg.[11] She further testified that she could resume her prior job "if the kids could take care of

4    themselves" and if she didn't have to bend, lift, or stoop.[12] She indicated that her career was initially

5    in nursing but that she couldn't perform nursing work anymore because of her hand.[13] Finally, she

6    testified that she had not engaged in any sort of community or volunteer activities.[14]

7    **2.2    The VE's Testimony**

8        The VE testified that the plaintiff's prior work experience included working as a nurse

9    assistant (DOT 355. 674-014), home attendant, and child monitor (DOT 301. 677-010).[15] The first

10   hypothetical was a person who could lift or carry twenty pounds occasionally, ten pounds

11   frequently, could stand, walk or sit six hours out of an eight-hour workday, could push or pull as

12   much as she could lift or carry, could occasionally stoop and occasionally climb, and could

13   frequently balance, kneel, crouch, and crawl. The person could not work around concentrated

14   exposures to vibrations, unprotected heights or dangerous, moving mechanical parts. She could

15   not work around concentrated exposures to extreme cold. She could occasionally reach overhead

16   with her left upper extremity and could lift overhead with her right upper extremity.[16] The VE

17   testified that the hypothetical person could work as a school-bus monitor (DOT 372. 667-042), a

18   shipping and receiving weigher (DOT 222. 387-074), and a cashier (DOT 211. 462-010).[17] The

19   ALJ asked the VE whether those same jobs would be available or others would be available "if a

20   person needed to have the ability to alternate between sitting or standing, as needed, so long as she

21

22

---

23   [10] *Id.* at 566.

24   [11] *Id.* at 569.

     [12] *Id.* at 570.

25   [13] *Id.*

26   [14] *Id.* at 571.

     [15] *Id.* at 573–74.

27   [16] *Id.* at 574.

28   [17] *Id.* at 576–77.

AMENDED ORDER – No. 23-cv-05552-LB        3

1   is not rendered off task and does not leave the work station."[18] The VE responded that the person

2   could work as a silver wrapper (DOT 318. 687-018). She further testified that the other jobs would

3   be eroded at fifty percent.[19] The ALJ asked whether any of these jobs required the person to lift

4   more than ten pounds, and the VE testified that such a requirement would eliminate the silver

5   wrapper job and the fifty percent erosion would still apply to the cashier position and school bus

6   monitor position.[20] The ALJ asked the VE whether a person could be off task fifteen percent of the

7   time, and the VE testified that it would render the person unemployable.[21] Finally, the ALJ asked

8   whether any of the skills from the plaintiff's prior work as a nursing assistant could be transferred

9   to other sedentary jobs, and the VE testified that they could not be transferred.[22]

10

11   **3.   ALJ Findings**

12   At step one, the ALJ found that the plaintiff met the insured-status requirement of the SSA

13   through September 30, 2017, and that she had engaged in substantial gainful activity between June

14   and December 2020.[23]

15   At step two, the ALJ found that the plaintiff had the following severe impairments: obesity,

16   degenerative disc disease of the cervical and lumbar spine, hypertension, degenerative joint

17   disease of the left shoulder with possible bicipital tendonitis, and mild to moderate osteoarthritis of

18   the right knee.[24]

19   At step three, the ALJ found that the plaintiff did not have an impairment or combination of

20   impairments that met or medically equaled the severity of one of the listed impairments in 20

21   C.F.R., §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926.[25]

22   _____

23   [18] *Id.* at 577.
      [19] *Id.* at 577–78.

24   [20] *Id.* at 578–79.

25   [21] *Id.* at 579–80.

26   [22] *Id.* at 580.
      [23] *Id.* at 538.

27   [24] *Id.*

28   [25] *Id.* at 539–40.

*United States District Court*
*Northern District of California*

1    Before reaching step four, the ALJ found that the plaintiff had a residual-functional capacity

2    (RFC) to perform light work.[26] The ALJ limited the plaintiff's RFC as follows:

3        The plaintiff is able to "lift or carry 20 pounds occasionally and 10 pounds
         frequently; sit, walk, or stand each for 6 hours in an 8 hour workday; could push or
4        pull as much as she could lift or carry; she can occasionally stoop and occasionally
         climb; frequently balance, kneel, crouch or crawl; cannot work around concentrated
5        exposure to vibrations, unprotected heights, dangerous moving mechanical parts;
         she cannot work around concentrated exposure to extreme cold; she could
6        occasionally reach overhead bilaterally; and this individual must be allowed to
         alternate between sitting and standing as needed so long as she is not rendered off
7        task and does not need to leave the workstation."[27]

8    At step four, the ALJ found that the plaintiff has no past relevant work.[28] The ALJ

9    acknowledged that the "application of Medical-Vocational Rule 202.04 would result in a finding

10   of disability in this case" but ultimately concluded that application of that rule was "not supported"

11   because the plaintiff "d[id] not meet the requirements of a borderline age category under [the]

12   regulations."[29] The ALJ found that the plaintiff has at least a high-school education and no past

13   relevant work.

14   At step five, the ALJ found that the plaintiff could work as a school-bus monitor (DOT 372.

15   667-042), cashier (DOT 211. 462-010), and silver wrapper (DOT 318. 687-018).[30] Accordingly,

16   the ALJ determined that the plaintiff was not disabled.[31]

17

18   **STANDARD OF REVIEW**

19   Under 42 U.S.C. § 405(g), district courts have jurisdiction to review any final decision of the

20   Commissioner if the claimant initiates a suit within sixty days of the decision. A court may set aside

21   the Commissioner's denial of benefits only if the ALJ's "findings are based on legal error or are not

22   supported by substantial evidence in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591

23

24   [26] *Id.* at 540.

25   [27] *Id.*

26   [28] *Id.* at 545.

     [29] *Id.* at 546.

27   [30] *Id.* at 546–47.

28   [31] *Id.* at 547.

1    (9th Cir. 2009) (cleaned up); 42 U.S.C. § 405(g). "Substantial evidence is such relevant evidence as a

2    reasonable mind might accept as adequate to support a conclusion, and must be more than a mere

3    scintilla, but may be less than a preponderance." *Kitchen v. Kijakazi*, 82 F.4th 732, 738 (9th Cir.

4    2023) (cleaned up). The reviewing court should uphold "such inferences and conclusions as the

5    [Commissioner] may reasonably draw from the evidence." *Mark v. Celebrezze*, 348 F.2d 289, 293

6    (9th Cir. 1965). If the evidence in the administrative record supports the ALJ's decision and a

7    different outcome, the court must defer to the ALJ's decision and may not substitute its own decision.

8    *Tackett v. Apfel*, 180 F.3d 1094, 1097–98 (9th Cir. 1999). "Finally, [a court] may not reverse an

9    ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th

10   Cir. 2012), *superseded by regulation on other grounds as stated in Thomas v. Saul*, 830 F. App'x

11   196, 198 (9th Cir. 2020).

## GOVERNING LAW

13       A claimant is considered disabled if (1) he suffers from a "medically determinable physical or

14   mental impairment which can be expected to result in death or which has lasted or can be expected

15   to last for a continuous period of not less than twelve months," and (2) the "impairment or

16   impairments are of such severity that [he] is not only unable to do [his] previous work but cannot,

17   considering his age, education, and work experience, engage in any other kind of substantial

18   gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(A) & (B). The five-

19   step analysis for determining whether a claimant is disabled within the meaning of the Social

20   Security Act is as follows. *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

21       **Step One.** Is the claimant presently working in a substantially gainful activity? If so, then the
22       claimant is "not disabled" and is not entitled to benefits. If the claimant is not working in a
         substantially gainful activity, then the claimant's case cannot be resolved at step one, and the
23       evaluation proceeds to step two. *See* 20 C.F.R. § 404.1520(a)(4)(i).

24       **Step Two.** Is the claimant's impairment (or combination of impairments) severe? If not, the
         claimant is not disabled. If so, the evaluation proceeds to step three. *See* 20 C.F.R. §
25       404.1520(a)(4)(ii).

26       **Step Three.** Does the impairment "meet or equal" one of a list of specified impairments
         described in the regulations? If so, the claimant is disabled and is entitled to benefits. If the
27       claimant's impairment does not meet or equal one of the impairments listed in the regulations,
         then the case cannot be resolved at step three, and the evaluation proceeds to step four. *See* 20
         C.F.R. § 404.1520(a)(4)(iii).
28

AMENDED ORDER – No. 23-cv-05552-LB                6

United States District Court
Northern District of California

1

2

**Step Four.** Considering the claimant's RFC, is the claimant able to do any work that he or she has done in the past? If so, then the claimant is not disabled and is not entitled to benefits. If the claimant cannot do any work he or she did in the past, then the case cannot be resolved at step four, and the case proceeds to the fifth and final step. *See* 20 C.F.R. § 404.1520(a)(4)(iv).

3

4

5

6

7

**Step Five.** Considering the claimant's RFC, age, education, and work experience, is the claimant able to "make an adjustment to other work?" If not, then the claimant is disabled and entitled to benefits. *See* 20 C.F.R. § 404.1520(a)(4)(v). If the claimant is able to do other work, the Commissioner must establish that there are a significant number of jobs in the national economy that the claimant can do. There are two ways for the Commissioner to show other jobs in significant numbers in the national economy: (1) by the testimony of a vocational expert or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R., part 404, subpart P, app. 2.

8

## ANALYSIS

9

10

11

12

The plaintiff contends that the ALJ erred by (1) improperly weighing the medical evidence, (2) rejecting her testimony, (3) failing to evaluate lay-witness observations, and (4) formulating an RFC that is not supported by substantial evidence. The Commissioner argues that the ALJ properly weighed the evidence in this case and that the RFC is supported by substantial evidence.

13

14

For the reasons below, the court remands for further proceedings concerning some of the medical evidence, the plaintiff's testimony, and one lay witness observation.

15

16

**1.   Whether the ALJ Properly Weighed Medical Evidence**

17

18

19

20

21

The plaintiff contends that the ALJ erred by (1) assigning great weight to the opinion of Soheila Benrazavi, M.D., (2) not weighing the opinions of Jeff Ritterman, M.D., and Laura Dejesus, PT, and (3) discounting the opinion of Emily Hunter-Adamson, M.D.[32] The Commissioner responds that the ALJ properly accounted for all medical opinions.[33] The court remands for further proceedings regarding Dr. Hunter-Adamson's opinion.

22

23

24

25

The ALJ is responsible for "resolving conflicts in medical testimony, and for resolving ambiguities." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014). In weighing and evaluating the evidence, the ALJ must consider the entire case record, including each medical opinion in the record, together with the rest of the relevant evidence. 20 C.F.R. § 416.920b; *see Orn v. Astrue*,

26

27

[32] Br. – ECF No. 26 at 20–26.

28

[33] Br. – ECF No. 28 at 6–10.

AMENDED ORDER – No. 23-cv-05552-LB                 7

United States District Court
Northern District of California

1  495 F.3d 625, 630 (9th Cir. 2007) ("[A] reviewing court must consider the entire record as a

2  whole and may not affirm simply by isolating a specific quantum of supporting evidence.")

3  (cleaned up).

4     "In conjunction with the relevant regulations, [the Ninth Circuit has] developed standards that

5  guide [the] analysis of an ALJ's weighing of medical evidence." *Ryan v. Comm'r of Soc. Sec.*, 528

6  F.3d 1194, 1198 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527).[34] Social Security regulations

7  distinguish among three types of physicians: (1) treating physicians; (2) examining physicians;

8  and (3) non-examining physicians. 20 C.F.R. § 416.927(c) & (e); *Lester v. Chater*, 81 F.3d 821,

9  830 (9th Cir. 1995). "Generally, a treating physician's opinion carries more weight than an

10  examining physician's, and an examining physician's opinion carries more weight than a

11  reviewing [non-examining] physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir.

12  2001); *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996).

13     "To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state

14  clear and convincing reasons that are supported by substantial evidence." *Ryan*, 528 F.3d at 1198

15  (alteration in original) (cleaned up). By contrast, if the ALJ finds that the opinion of a treating or

16  examining physician is contradicted, a reviewing court will require only that the ALJ provide

17  "specific and legitimate reasons supported by substantial evidence in the record." *Reddick v.*

18  *Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (cleaned up); *see Garrison*, 759 F.3d at 1012 ("If a

19  treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may

20  only reject it by providing specific and legitimate reasons that are supported by substantial

21  evidence.") (cleaned up). "The opinions of non-treating or non-examining physicians may also

22  serve as substantial evidence when the opinions are consistent with independent clinical findings

23  or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

24

25

26  [34] The Social Security Administration promulgated new regulations, including a new § 404.1521,

27  effective March 27, 2017. The previous version, effective to March 26, 2017, governs based on the plaintiff's filing date.

28

1    An ALJ errs when he "rejects a medical opinion or assigns it little weight" without explanation

2    or without explaining why "another medical opinion is more persuasive, or criticiz[es] it with

3    boilerplate language that fails to offer a substantive basis for his conclusion." *Garrison*, 759 F.3d

4    at 1012–13. "[F]actors relevant to evaluating any medical opinion, not limited to the opinion of the

5    treating physician, include the amount of relevant evidence that supports the opinion and the

6    quality of the explanation provided[,] the consistency of the medical opinion with the record as a

7    whole[, and] the specialty of the physician providing the opinion . . . ." *Orn*, 495 F.3d at 631

8    (citing 20 C.F.R. § 404.1527(d)(3)–(6)); *see also Magallanes v. Bowen*, 881 F.2d 747, 753 (9th

9    Cir. 1989) (an ALJ need not agree with everything contained in the medical opinion and can

10   consider some portions less significant than others).

11   In addition to the medical opinions of the "acceptable medical sources" outlined above, the

12   ALJ also must consider the opinions of other "medical sources who are not acceptable medical

13   sources and [the testimony] from nonmedical sources." 20 C.F.R. § 404.1527(f). The ALJ is

14   required to consider observations by these sources as to how an impairment affects a claimant's

15   ability to work. *Id.* Nonetheless, an "ALJ may discount [the] testimony" or an opinion "from these

16   other sources if the ALJ gives . . . germane [reasons] for doing so." *Molina*, 674 F.3d at 1111

17   (cleaned up). "[A]n opinion from a medical source who is not an acceptable medical source . . .

18   may outweigh the medical opinion of an acceptable medical source[.]" 20 C.F.R. § 404.1527(f)(1).

19   "For example, it may be appropriate to give more weight to the opinion of a medical source who is

20   not an acceptable medical source if he or she has seen the individual more often than the treating

21   source, has provided better supporting evidence and a better explanation for the opinion, and the

22   opinion is more consistent with the evidence as a whole." *Id.*

23   Here, the plaintiff first contends that the ALJ "gave no new reasons to give great weight" to

24   Dr. Benrazavi's opinions and that because this court already concluded that the ALJ's "earlier

25   reasons failed," the ALJ's current evaluation of Dr. Benrazavi's opinion amounts to "pure error."[35]

26   But the ALJ did provide three additional reasons in the August 2023 unfavorable decision. In

27

28   [35] Br. – ECF No. 26 at 23–24.

United States District Court
Northern District of California

1    giving great weight to Dr. Benrazavi's opinion, the ALJ found the following: (1) obesity was the

2    only limitation that satisfied the durational requirement of severity; (2) the physical examinations

3    in the record indicate that the plaintiff walked with a normal gait; and (3) the plaintiff had

4    substantial gainful activity by performing medium work.[36] Thus, the court concludes that the ALJ

5    did not err by assigning great weight to this opinion.[37]

6        Next, the plaintiff contends that the ALJ erred by failing to weigh the opinions of Dr. Ritterman

7    and PT Dejesus at all.[38] The Commissioner argues that these records do not "contain medical

8    opinions regarding her functional capacity" and that the ALJ was "not required to explain or evaluate

9    them."[39] The court concludes that the ALJ did not err because the record only contains treatment

10   notes from these practitioners.[40] *See, e.g, Bass v. Berryhill*, No. 18-cv-07053-DMR, 2020 WL

11   1531324, at *5 (N.D. Cal. Mar. 31, 2020) ("[The plaintiff] cites to treatment notes, not medical

12   opinions . . . While these records are part of the evidence, they are not medical opinions that the ALJ

13   was required to individually discuss and weigh."); *Kaminski v. Kijakazi*, 856 F. App'x 735, 736 (9th

14   Cir. 2021) ("Because the treating psychiatrist's treatment notes offered no opinion about the severity

15   of [the plaintiff's] mental impairments or any functional limitations that those impairments caused,

16   they are not medical opinions that the ALJ must address in [the] disability determination.").

17       Finally, the plaintiff contends that the ALJ erred by giving little weight to Dr. Hunter-

18   Adamson's opinion. The Commissioner argues that the ALJ appropriately gave Dr. Hunter-

19   Adamson's opinion little weight because "Dr. Hunter-Adamson never saw [the p]laintiff for

20   complaints related to her severe impairments" and because her report "appeared to be based

21   primarily" on the plaintiff's "subjective complaints."[41] The court remands on this ground.

22

23

24   [36] AR 545.

25   [37] The court addresses other evidence concerning the plaintiff's gait below.

     [38] Br. – ECF No. 26 at 24–25.

26   [39] Br. – ECF No. 28 at 9.

27   [40] AR 483–500 (Dr. Ritterman); 357–69 (PT Dejesus).

28   [41] Br. – ECF No. 28 at 10.

United States District Court
Northern District of California

1    The ALJ rejected Dr. Hunter-Adamson's opinion because Dr. Hunter-Adamson's treatment

2    records didn't support the limitations she indicated in her assessment and because her opinion

3    "appear[ed] to be entirely based on the [plaintiff's] allegations as described by her representative

4    in his . . . letter requesting a treating source statement."[42] While it is true that medical opinions can

5    be discounted when they largely rely on the plaintiff's self-reports, asking a treating physician's

6    office to fill out a questionnaire to have an opinion for administrative review does not largely rely

7    on the plaintiff's self-reporting. [43] *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196

8    n.5 (9th Cir. 2004) (explaining the reason why "medical reports are obtained does not provide a

9    legitimate basis for rejecting them"). Dr. Hunter-Adamson's answers on the questionnaire suggest

10   that she consulted the plaintiff's records when she filled it out because she indicated that the

11   plaintiff sustained an arm injury in October 2022. That injury is not listed in the November 2022

12   request letter, although it does list "frozen shoulder" as one of the plaintiff's diagnosed

13   conditions.[44] Dr. Hunter-Adamson's treatment notes also include the plaintiff's history of lumbar

14   degenerative disc disease and ataxia, meaning she had an independent basis for those conditions in

15   her answers.[45] Other instances in the record indicate Dr. Hunter-Adamson's familiarity with the

16   plaintiff's severe impairments at issue in this case. For example, in May 2022, Dr. Hunter-

17   Adamson wrote a letter on the plaintiff's behalf indicating that "she has lumbar disc generation

18   that causes pain and makes climbing stairs very difficult" so that the plaintiff could remain in her

19   first-floor apartment.[46] Because the court grants remand on other issues, the court remands for a

20   re-evaluation of Dr. Hunter-Adamson's opinion.

21

22   _____

23   [42] AR 544.

     [43] The letter is addressed to a nurse in the same practice group as Dr. Hunter-Adamson. While it is
24   written on the plaintiff's representative's letterhead, the plaintiff signed the letter. Thus, the ALJ is
     incorrect to characterize the letter as originating solely from the plaintiff's representative. *See id.* at
25   953.

     [44] *Id.* at 953; *see also id.* at 959 (The plaintiff's arm injury is listed on the questionnaire as the "earliest
26   date from which the limitations assessed on this form have existed at the assessed severity") (cleaned
     up).

27   [45] *See, e.g., id.* at 1063.

28   [46] *Id.* at 1082.

1    **2.  Whether the ALJ Erred by Discounting the Plaintiff's Testimony**

2        The plaintiff contends that the ALJ erred by discrediting her testimony.[47] The Commissioner

3    counters that the ALJ provided clear and convincing reasons for discounting the plaintiff's

4    subjective complaints.[48] The ALJ did not say which symptom testimony was not credible, and the

5    court remands on this ground.

6        In assessing a claimant's credibility, an ALJ must make two determinations. *Molina*, 674 F.3d

7    at 1112. "First, the ALJ must determine whether [the claimant has presented] objective medical

8    evidence of an underlying impairment which could reasonably be expected to produce the pain or

9    other symptoms alleged." *Id.*; *see also* 20 C.F.R. § 404.1520(a). Second, if the claimant produces

10   that evidence, and "there is no evidence of malingering," the ALJ must provide "specific, clear

11   and convincing reasons for" rejecting the claimant's testimony regarding the severity of the

12   claimant's symptoms. *Molina*, 674 F.3d at 1112 (cleaned up).

13       "The ALJ must state specifically which symptom testimony is not credible and what facts in

14   the record lead to that conclusion." *Smolen*, 80 F.3d at 1284; *Treichler v. Comm'r of Soc. Sec.*

15   *Admin.*, 775 F.3d 1090, 1102–03 (9th Cir. 2014) (in order to have a meaningful appellate review,

16   the ALJ must explain its reasoning; "[g]eneral findings are insufficient"); *Burrell v. Colvin*, 775

17   F.3d 1133, 1138 (9th Cir. 2014). "Factors that an ALJ may consider in weighing a claimant's

18   credibility include reputation for truthfulness, inconsistencies in testimony or between testimony

19   and conduct, daily activities, and unexplained, or inadequately explained, failure to seek treatment

20   or follow a prescribed course of treatment." *Orn*, 495 F.3d at 636; *see also* 20 C.F.R. § 416.929.

21   And the court will "review only the reasons provided by the ALJ in the disability determination

22   and may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010.

23       Here, the ALJ found that the plaintiff's "medically determinable impairments could reasonably

24   be expected to cause the alleged symptoms" at step one but discounted her symptom testimony at

25   step two because (1) the record showed periods of substantial gainful employment, (2) the plaintiff

26

27   _____
     [47] Br. – ECF No. 26 at 26–30.

28   [48] Br. – ECF No. 28 at 11–15.

AMENDED ORDER – No. 23-cv-05552-LB          12

*United States District Court*
*Northern District of California*

1    testified that she could return to work, and (3) the medical evidence was inconsistent with a

2    finding of disability.[49] These are "specific, clear and convincing reasons" for rejecting the

3    claimant's testimony regarding the severity of the claimant's symptoms. *Molina*, 674 F.3d at 1112

4    (cleaned up). The problem, however, is that the ALJ didn't indicate what symptom testimony was

5    not credible. *Smolen*, 80 F.3d at 1284. The court remands on this ground.

6

7    **3.   Whether the ALJ Erred by Failing to Discuss Lay Witness Observations**

8         The plaintiff contends that the ALJ erred by failing to discuss Social Security Administration

9    employees' observations concerning the plaintiff during her field office visits.[50] The

10   Commissioner argues that the ALJ was not required to do so, and in any event, any error was

11   harmless.[51] The court remands for consideration of agency observations about the plaintiff's

12   ability to lower herself into and raise herself out from a chair.

13        Social Security Ruling 16-3p indicates that the agency "will consider any statements in the

14   record noted by agency personnel who previously interviewed the individual, whether in person or

15   by telephone" and that "[t]he adjudicator will consider any personal observation of the individual

16   in terms of how consistent those observations are with the individual's statements about his or her

17   symptoms as well as with all of the evidence in the file." 2017 WL 5180304, at *7. The plain

18   language of the ruling thus indicates that the ALJ must consider the lay witness observations in the

19   record, but it does not state that the ALJ must discuss them. *Herbert L. v. Kijakazi*, No. 20-cv-

20   06779-SVK, 2021 WL 4924767, at *3 (N.D. Cal. Aug. 11, 2021). That said, "where the ALJ's

21   error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a

22   reviewing court cannot consider the error harmless unless it can confidently conclude that no

23   reasonable ALJ, when fully crediting the testimony, could have reached a different disability

24   determination." *Molina*, 674 F.3d at 1116.

25

26   _____

     [49] AR 540–45.

27   [50] Br. – ECF No. 26 at 31–33.

28   [51] Br. – ECF No. 28 at 15–16.

United States District Court
Northern District of California

1    Here, the personnel observations include the plaintiff's arm pain, a slight limp when "getting up,"

2    indications of pain while remaining seated, and "difficulty lowering herself into [a] chair and getting

3    out of [a] chair."[52] On this record, it is clear that the ALJ discussed the plaintiff's arm pain.[53] Thus,

4    any failure to discuss the lay witness's observation concerning the plaintiff's arm pain is harmless.

5    The same is true regarding the plaintiff's limp in that the ALJ mentions a "mildly antalgic gait."[54]

6    The ALJ also addressed the plaintiff's need to alternate between sitting and standing in the plaintiff's

7    RFC, so any failure to discuss the lay observation about the plaintiff's pain while remaining seated is

8    also harmless.[55] The issue is thus the agency personnel's observation concerning the plaintiff's

9    difficulty lowering herself into and raising herself out of a chair. There is no contradiction or other

10   mention of it in the record, and the ALJ does not discuss it. This lay observation is favorable to the

11   plaintiff, and the court cannot conclude that the ALJ's failure to discuss it is harmless.

12

13   **4.  Whether Substantial Evidence Supports the RFC**

14   Finally, the plaintiff contends that the RFC is not supported by substantial evidence. The

15   Commissioner argues otherwise. The court remands on this ground.

16   "[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct

17   RFC." *Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015); *see also*

18   *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("it is the responsibility of the ALJ, not

19   [a] physician, to determine residual functional capacity [RFC]"). The ALJ's determination of a

20   claimant's RFC must be based on the medical opinions and the totality of the record. 20 C.F.R. §§

21   404.1527(d), 404.1546(c). Moreover, the ALJ is responsible for "'resolving conflicts in medical

22   testimony, and for resolving ambiguities.'" *Garrison*, 759 F.3d at 1010. In weighing and

23   evaluating the evidence, the ALJ must consider the entire case record, including each medical

24   opinion in the record, together with the rest of the relevant evidence. 20 C.F.R. § 416.927(b); *see*

25   _____

26   [52] AR 261, 290.

     [53] *Id.* at 542.

27   [54] *Id.* at 544.

28   [55] *Id.* at 540.

United States District Court
Northern District of California

1    *also Orn*, 495 F.3d at 630 ("[A] reviewing court must consider the entire record as a whole and

2    may not affirm simply by isolating a specific quantum of supporting evidence.") (cleaned up).

3         As a preliminary matter, this case is distinguishable from the case the plaintiff cites in support

4    of her argument. In *Perez v. Astrue*, the Ninth Circuit concluded that the "need to sit and stand at

5    will is incompatible with the need to either sit or stand for six hours in an eight-hour workday."

6    250 F. App'x 774, 776 (9th Cir. 2007). The court noted that "both vocational experts testified that

7    the need to alternate between sitting and standing at will for anything more than a momentary

8    reprieve would preclude all work or all sedentary work that exists in significant numbers in the

9    national economy." *Id.* As discussed above, the VE in this case provided three jobs that the

10   plaintiff could do even with the sit/stand option the ALJ outlined at step five.[56]

11        That said, because the court remands for further proceedings to re-evaluate the plaintiff's

12   testimony and some of the medical evidence and lay-witness observations, the court remands so that

13   the ALJ can consider the entire record when formulating the RFC.

14

15   **5.  Remand**

16        The plaintiff contends that this court should remand with the instruction for immediate

17   payment of benefits because she would be found disabled under Medical Vocational Rule 202.04

18   due to her advanced age.[57] The Commissioner counters that even if that were true, further

19   proceedings are required to determine the plaintiff's alleged onset date.[58] The court remands for

20   further proceedings.

21        Ordinarily, "[i]f additional proceedings can remedy defects in the original proceeding, a social

22   security case should be remanded." *Garrison*, 759 F.3d at 1019 (quoting *Lewin v. Schweiker*, 654

23   F.2d 631, 635 (9th Cir. 1981)). The language of the "Social Security Act, however, makes clear that

24   courts are empowered to affirm, modify, or reverse a decision by the Commissioner 'with or

25

26   _____

27   [56] AR 576–79.

     [57] Br. – ECF No. 26 at 33.

28   [58] Br. – ECF No. 28 at 17–18.

AMENDED ORDER – No. 23-cv-05552-LB              15

United States District Court
Northern District of California

*without* remanding the cause for rehearing.'" *Id.* (citing 42 U.S.C. § 405(g)). The court remands

here because "it is not clear from the record that an [ALJ] would be required to find the [plaintiff]

disabled and award disability benefits." *Bunnell v. Barnhart*, 336 F.3d 1112, 1116 (9th Cir. 2003).

**CONCLUSION**

The court remands the case for further proceedings.

**IT IS SO ORDERED.**

Dated: September 17, 2024



LAUREL BEELER
United States Magistrate Judge

United States District Court
Northern District of California